# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **DANYEL STUMBO,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:04cv00117 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | By:   Pamela Meade Sargent |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

*I. Background and Standard of Review*

Plaintiff, Danyel Stumbo, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

-1-

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Stumbo protectively filed her application for SSI on or about March 6, 2002, alleging disability as of March 1, 1999, based on asthma, nerves and depression. (Record, ("R."), at 55-58, 74.)[1] Stumbo's claim was denied both initially and on reconsideration. (R. at 34-36, 37, 38-40.) Stumbo then requested a hearing before an administrative law judge, ("ALJ"). (R. at 41.) The ALJ held a hearing on May 22, 2003, at which Stumbo was represented by counsel. (R. at 269-302.)

By decision dated February 26, 2004, the ALJ denied Stumbo's claim. (R. at 16-28.) The ALJ found that Stumbo had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 27.) The ALJ found that the medical evidence established that Stumbo had severe impairments, namely discogenic/degenerative back disorder, asthma and depression, but he found that Stumbo did not have an impairment or combination of impairments listed at or

---

[1]Stumbo apparently filed at least two prior applications for SSI, both of which were denied initially and were not appealed by Stumbo. (R. at 16.)

medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 23, 27.) The ALJ further found that Stumbo's allegations regarding her limitations were not totally credible. (R. at 27.) The ALJ found that Stumbo had the residual functional capacity to perform simple, unskilled, nonstressful light work,[2] but could never climb and would have a limited ability to reach with her right shoulder (R. at 27.) The ALJ further found that Stumbo had moderate mental limitations in her ability to understand, remember and carry out detailed instructions, her ability to maintain attention and concentration for extended periods, her ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and her ability to set realistic goals or make plans independently of others. ( R. at 27.) The ALJ found that Stumbo had no past relevant work, but he found that other jobs existed in significant numbers in the national economy which Stumbo could perform. (R. at 28.) Therefore, the ALJ found that Stumbo was not under a disability as defined in the Act, and that she was not entitled to benefits. (R. at 28.) *See* 20 C.F.R. § 416.920(g) (2005).

After the ALJ issued his opinion, Stumbo pursued her administrative appeals, (R. at 12), but the Appeals Council denied her request for review. (R. at 6-8.) Stumbo then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2005). The

---

[2]Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 416.967(b) (2005).

case is before this court on Stumbo's motion for summary judgment filed February 10, 2005, and the Commissioner's motion for summary judgment filed April 12, 2005.

*II. Facts and Anaylsis*

Stumbo was born in 1971, (R. at 56), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). She has a high school education. (R. at 80.)

In rendering his decision, the ALJ reviewed records from Russell County Medical Center; Dr. Antonio M. Peralta, M.D.; Washington Square Clinic; Dr. Zafeer Barki, M.D.; Dr. J. P. Sutherland Jr., D.O.; Cumberland Mountain Community Services; various state agency physicians and psychologists; and Buchanan County General Hospital. Stumbo's attorney submitted additional medical records from Dr. Sutherland and Dr. Nasreen R. Dar, M.D., to the Appeals Council.[3]

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2005). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review

---

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 6-9), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

-4-

does not proceed to the next step.  *See* 20 C.F.R. § 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments.  Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy.  *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

In her brief, Stumbo argues that the ALJ erred by failing to grant controlling weight to the opinions of her treating and examining physicians.  (Motion For Summary Judgment And Memorandum Of Law On Behalf Of The Plaintiff, ("Plaintiff's Brief"), at 9-15.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings.  This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence.  *See Hays*, 907 F.2d at 1456.  In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence.  *See Sterling Smokeless*

*Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Stumbo argues that the ALJ erred by failing to grant controlling weight to the opinions of her treating and examining physicians. (Plaintiff's Brief at 9-15.) Based on my review of the record, I find that substantial evidence supports the ALJ's finding as to Stumbo's residual functional capacity, including his weighing of the medical evidence. The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 416.927(d)(2) (2005). However, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

The ALJ in this case found that Stumbo suffered from discogenic/degenerative back disorder, asthma and depression. The ALJ found that, as a result of these impairments, Stumbo had the residual functional capacity to perform simple, unskilled, nonstressful light work, but could never climb and would have a limited ability to reach with her right shoulder. He also found that she had moderate mental limitations in her ability to understand, remember and carry out detailed instructions, her ability to maintain attention and concentration for extended periods, her ability to

-6-

Case 1:04-cv-00117-PMS   Document 17   Filed 08/16/05   Page 6 of 9   Pageid#: 62

perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and her ability to set realistic goals or make plans independently of others.

In reaching these findings the ALJ stated that he was giving little credence to the assessments of Dr. Sutherland, Stumbo's treating general practitioner. A review of the record, however, shows that the ALJ's findings regarding Stumbo's physical residual functional capacity are, for the most part, consistent with Dr. Sutherland's findings. In particular, Dr. Sutherland completed four different assessments of Stumbo's work-related activities on July 15, 2002, September 24, 2002, November 21, 2002, and January 9, 2003, all of which were before the ALJ when he made his decision. ( R. at 178-85.) None of these assessments, however, list specific restrictions on Stumbo's work-related activities. Instead, they simply reflect that Dr. Sutherland found that Stumbo's ability in a number of areas was "limited" without listing any specific limitations. While it is true that Dr. Sutherland, on or about June 19, 2003, stated that Stumbo was "permanent[ly] disabled," (R. at 234), such a finding is not binding on the Commissioner and, in fact, any finding as to disability is reserved to the Commissioner. *See* 20 C.F.R. 416.927(e)(1) (2005). Furthermore, the only assessment by Dr. Sutherland listing any specific restrictions on Stumbo's work-related activities is dated August 11, 2004, almost six months after the ALJ issued his decision. (R. at 265-68.) Based on this, I find that the ALJ did not err by failing to give controlling weight to the opinion of Dr. Sutherland.

-7-

Stumbo argues that the ALJ also erred by failing to give controlling weight to the assessment of an examining physician, Dr. Peralta. Dr. Peralta saw Stumbo for a consultative examination at the request of Disability Services on September 23, 2002. (R. at 126-30.) Dr. Peralta stated that Stumbo was limited to sitting for less than one hour and standing for less than 20 minutes at a time. (R. at 129.) He further stated that Stumbo could lift and carry items weighing only up to five pounds. (R. at 129.) It appears from the record that Dr. Peralta's restrictions are based solely on Stumbo's subjective complaints in that no objective testing was performed and Dr. Peralta's report does not even contain any clinical findings such as wheezing or shortness of breath, limited ranges of motion, muscle spasms or pain upon palpation. In fact, to the contrary, Dr. Peralta states that his exam of Stumbo's back and spine were negative and her lungs were clear. (R. at 129.) It also is important to note that no physician has never found Stumbo's impairments serious enough to order additional testing such as pulmonary function studies or radiologic studies of her spine other than x-rays.

The ALJ's findings as to Stumbo's residual functional capacity are supported by the opinions of the state agency physicians and psychologists. In particular, Dr. Frank M. Johnson, M.D., and Dr. Gary Parrish, M.D., opined that Stumbo was capable of performing light work that did not involve any climbing and only limited reaching with her right arm. (R. at 165-72.) Also, the assessments of Julie Jennings, Ph.D., and R. J. Milan Jr., Ph.D., support the ALJ's finding as to Stumbo's mental residual functional capacity. (R. at 146-48.) Furthermore, while it appears that Stumbo has been evaluated by at least two psychiatrists, Dr. Barki and Dr. Dar, neither of them placed any restrictions on her work-related activities. (R. at 134-37, 238-42, 247-48.)

The only restrictions placed on Stumbo's mental work-related activities came from Dr. Sutherland, her treating general practitioner, almost six months after the ALJ's decision.

For all of these reasons, I find that substantial evidence supports the ALJ's finding as to Stumbo's residual functional capacity and his finding that she was not disabled.

### III. Conclusion

For the foregoing reasons, Stumbo's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

An appropriate order will be entered.

DATED:    This 16th day of August 2005.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE